**UNITED STATES of America**

v.

**Joseph F. FERNANDEZ, Defendant.**

**Crim. No. 89–150–A.**

United States District Court,
E.D. Virginia,
Alexandria Division.

July 10, 1989.

Laurence Shtasel, Geoffrey S. Stewart and Geoffrey S. Berman, Office of Independent Counsel, Washington, D.C., for plaintiff.

Thomas E. Wilson and Mary Beth Sullivan, Seyfarth, Shaw, Fairweather & Geraldson, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

HILTON, District Judge.

This matter came before the court on defendant's motion to suppress evidence under the precedent established by *Kastigar v. United States*, 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972) and to order discovery and hold an evidentiary hearing on the matter.[1] While the court has written on several other aspects in this case, a brief explanation of the background of the case may be helpful in addressing this issue.

---

1. Mr. Fernandez also requested that his indictment be dismissed because he felt tainted materials were used to procure his indictment. That request has been dealt with in a previous opinion issued June 15, 1989.

2. An incident in November 1986, when Congress undertook to investigate its suspicion that

The underlying case is one of several to arise out of the Congressional investigation of the Iran–Contra Affair.[2]  That investigation consisted of approximately 40 days of public hearings conducted by Select Investigation Committees chosen from each house, followed by closed executive hearings on the matter.  The public hearings commenced May 5, 1987.  Prior to this, in December, 1986, the President appointed a Special Review Board, known as the Tower Commission, to conduct an investigation of the same disclosures.  Also during this time period, Attorney General Meese sought appointment of an Independent Counsel to investigate possible criminal conduct in the same matter.  Lawrence E. Walsh was appointed to fill this position on December 19, 1986.

As the inquiries moved forward, Congress sought the testimony of certain individuals, including in time, that of Mr. Fernandez, former CIA Chief of Station in Costa Rica.  When Mr. Fernandez refused to testify, asserting his Fifth Amendment right against possible self-incrimination, he was granted use immunity pursuant to 18 U.S.C. § 6001 *et seq.* (1982 & Supp. II 1984).  His testimony was then compelled in the spring of 1987.

On June 20, 1988, a criminal indictment was returned in the District of Columbia charging defendant with violations in connection with the investigation.  That case was eventually dismissed for venue reasons.  Then, on April 24, 1989, Mr. Fernandez was indicted in the Eastern District of Virginia and charged with the four violations which constitute the case against him at this point: Count One charges defendant with obstructing a proceeding under 18 U.S.C. § 1505 (1982) by making false and misleading statements to the CIA's Office of Inspector General (OIG) about his role in supporting the Contras while CIA Chief of Station in Costa Rica;  Count Two charges

the administration was trafficking arms to Iran to bring about the release of American hostages and that the proceeds had been diverted to the Nicaraguan contras for military assistance at a time when Congress has legislated to bar such aid to these resistance forces.

defendant with making false statements to the OIG concerning his involvement with an airstrip in Costa Rica used to support the Contras, in violation of 18 U.S.C. § 1001 (1982); Count Three charges defendant with obstructing a proceeding under 18 U.S.C. § 1505 by making false and misleading statements to the Tower Commission about his involvement with efforts to resupply the Contras; Count Four charges defendant with making false statements to the Tower Commission about his involvement with and knowledge of the Contra resupply effort, in violation of 18 U.S.C. § 1001.

Mr. Fernandez now claims that the immunized testimony he was compelled to give in the spring of 1987 is being used against him, thereby violating his Fifth Amendment rights and the use immunity he was granted when compelled to testify. The immunity statute, 18 U.S.C. § 6002, provides in pertinent part:

> "no testimony or other information compelled under the order (or any information directly or indirectly derived from such testimony or other information) may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement, or otherwise failing to comply with the order."
>
> *Id.*

In *Kastigar*, the Supreme Court prescribed that the scope of the "use and derivative use" immunity was "coextensive with the scope of the Fifth Amendment privilege against compulsory self-incrimination." *Kastigar, supra* at 448, 92 S.Ct. at 1658. Furthermore, *Kastigar* emphasized the "heavy burden" of proof borne by the United States to prove that they "had an independent, legitimate source for the disputed evidence," adding that such burden "is not limited to the negation of taint; rather it imposes on the prosecution the affirmative duty to prove that the evidence it proposes to use is derived from a legitimate source wholly independent of the compelled testimony." *Id.* at 460, 92 S.Ct. at 1664. Thus, the prosecution must prove that it was not led, directly or indirectly, to the discovery of evidence through the immunized testimony. *United States v. Poindexter*, 698 F.Supp. 300, 306 (D.D.C.1988).

Accordingly, the court ordered the Office of the Independent Counsel to make pre-trial filings *in camera* to demonstrate the precautions taken to ensure that no use of defendant's immunized testimony was or will be made and to demonstrate the independent sources for all the evidence it will present in the Fernandez case. The court has reviewed, *in camera,* the submissions by the government of the body of evidence they had collected prior to Fernandez's immunized testimony, their efforts to identify the source of all subsequent additions, and their efforts to segregate such untainted material from any tainting influences; excerpts of grand jury transcripts documenting the precautions taken to avoid use of any immunized testimony; documentation of the precautions taken by Independent Counsel to avoid taint from exposure to publicity and immunized testimony, including a memorandum issued the week before Fernandez was to testify warning all personnel to renew their attention to such matters; and substantial proof of Independent Counsel's legitimate independent leads to every significant witness or document.

On the basis of these filings, the court has determined that neither further discovery nor a pre-trial *Kastigar* hearing will be necessary. The defendant testified under a grant of immunity on three separate dates: April 20, May 4, and May 29, 1987. These sessions were closed to the public. The court has received written materials from the Independent Counsel demonstrating that most of the prosecutor's witnesses and documents were known to him before the first grant of immunity, and that those that were not were developed from legitimate sources independent from any immunized testimony.

In addition, from the outset, Independent Counsel undertook to enforce a prophylactic system which prevented any members of that office directly involved in the prosecution from being exposed, directly or indirectly, to the immunized testimony. Prosecuting personnel were sealed off from exposure to the immunized testimony and any

publicity concerning it. They were instructed to shut off television or radio broadcasts that approached the discussion of the immunized testimony. The Independent Counsel mandated use of a special form which required a description of any new evidence or lead and the identification of the source for that piece of evidence or lead.

In light of the foregoing, the court reaches its preliminary decision that the case should proceed to trial. The extensive precautions taken, coupled with the proper questioning of witnesses prior to their testimony to determine whether a given witness can testify from his or her personal knowledge and separate such testimony from any direct or indirect basis in defendant's immunized testimony, satisfies the court that defendant's Fifth Amendment rights have been and can be adequately protected as the case proceeds to trial. Specific objections to the introduction of evidence can be dealt with at the time of trial.

Accordingly, the court finds:

1. The prosecuting attorneys and Independent Counsel have not read the immunized testimony.

2. The staff at the Office of the Independent Counsel were aware of the witnesses to be called at trial and essential documents, either long before any immunized testimony was given by the defendant, or through legitimate means wholly distinct from any immunized testimony of the defendant. In fact, in many cases its investigators had already been in direct contact with the witnesses or already had possession of the proposed documents.

3. The Office of the Independent Counsel has at all times proceeded in good faith and taken strenuous precautions to safeguard defendant's Fifth Amendment rights.

4. The government has preliminarily met its "heavy burden" under *Kastigar*, to demonstrate the legitimate, independent sources for all of its evidence to be presented at trial. The inquiry has uncovered no action by the government that has infringed the protection against the direct or indirect use of defendant's compelled testimony and no basis has appeared pre-trial to warrant a full blown *Kastigar* hearing or the preclusion of any pieces of evidence at this point in the proceedings.

5. Defendant's rights can be adequately protected by the precautions already taken, specific objections at the time of trial as necessary, and a thorough questioning of witnesses before they take the stand. Such questioning will require the witnesses to make sure that their answers to questions are based solely on their own personal knowledge and recollection of the events in question, and prohibit them from relating anything which they learned for the first time as a result of listening to or reading or hearing about immunized testimony.

For the foregoing reasons, the court concludes that a pre-trial *Kastigar* hearing is not warranted. The case shall proceed to trial, at which point a determination will be made on each witness through voir dire targeting possible derivation from immunized testimony and on each piece of other evidence through specific objections pertaining to its derivation from immunized testimony. And it is so ordered.